GOODRIDE TIRE CO., APPELLEE, *v.* ALBERT-HARRIS, INC.,
ET AL., APPELLANTS.*

(No. 4966—Decided July 6, 1960.)

*Messrs. McGowan, Scanlon & Lombardi,* for appellee.
*Messrs. Johnson, Whitmer & Sayre,* for appellants.

HUNSICKER, J. Goodride Tire Company, herein called
Goodride, obtained a judgment against Albert-Harris, Inc.,
herein called Albert-Harris, upon a series of cognovit notes
given by Albert-Harris to Goodride for money loaned by Good-
ride to Albert-Harris.

There is no question, from a study of the record before us,
that all the money sued for herein was advanced by Goodride to
Albert-Harris for the use and benefit of Albert-Harris. The
difficulty arises from the fact that Albert-Harris is a defunct
corporation, with no money to pay its creditors, but it possessed
a factory building which has been sold for more than enough to
pay the mortgage liens and satisfy the Goodride judgment lien,
if that judgment herein is valid.

Goodride is owned by Edward Harris. Albert-Harris is
owned 50 per cent by Edward Harris and 50 per cent by Sydney
Albert. Edward Harris was the president of both corporations
during the period when loans were being made by Goodride to
Albert-Harris. Goodride secured its funds from Edward Har-

*Motion to certify the record overruled, November 23, 1960.

ris and from one Hewitt, who was to act as a distributor for tire machinery. This machinery was to be made by Albert-Harris upon order of Goodride. The patents on such machines were owned by Goodride. No machines were produced. Hewitt never completed his contract to advance money beyond a first payment of $250,000.

The corporate records were not kept with that degree of efficiency that the financial size of the transactions merited; however, it is certain that express authority was given by the board of directors of Albert-Harris to secure $119,000 of the borrowings by a note to be met by contra credits on the purchase of machines, none of which were ever delivered to Goodride. Ninety-two thousand dollars of this amount had been borrowed before the action of the board of directors of Albert-Harris, and it was apparent that such amount was not paid out by Goodride in one lump sum, but in amounts as needed by Albert-Harris. It is also apparent that the balance of $27,000 was to be borrowed in the same manner. The claim that there was to be only one note for this amount, when all persons connected with the business knew how it was being received, is so untenable as to need no comment.

The minutes of the board of directors of Albert-Harris at a meeting held on June 15, 1957, clearly indicate that all the directors knew that Goodride had loaned not only $119,000 to keep Albert-Harris in operation, but that notes to a total of $189,300 were outstanding to Goodride for loans made to Albert-Harris. The directors knew also that action had been commenced by Goodride to collect the sums due it, for these minutes so show.

Now, after the loans were made, there is a challenge to the authority of Edward Harris, the officer of Albert-Harris who signed the notes given to Goodride. This loan of money was not tinged with fraud, and it is not fictitious; it was real and admitted by all parties to be real.

Edward Harris was Albert-Harris when times were good and that company was making money. He had complete charge of the corporation in all things except major policy matters. We believe this fact, coupled with his very liberal employment contract, gave him the authority to sign these notes for bona fide loans, and it ill behooves Albert-Harris to now seek to claim

the act of its chief officer was done without authority. His acts, in our opinion, were well within the scope of his actual, as well as apparent, authority in the premises.

It might also be noted here that article IV(b) of the code of regulations of Albert-Harris says that the president "shall sign all share certificates, *contracts*, and other instruments of the corporation as authorized by the board of directors, shall make reports to the board of directors and shareholders, and shall perform all such other duties as are incident to his office or are properly required of him by the board of directors." (Emphasis ours.)

In all respects a promise to pay money is a contract, albeit a special type of contract.

Section 1301.21, Revised Code, reads:

"The signature of any party may be made by an authorized agent. No particular form of appointment is necessary for this purpose, and the authority of the agent may be established as in other cases of agency."

The agency of Edward Harris cannot be contested by any party, for by his employment contract, and by actual conduct, he operated Albert-Harris.

It is the conclusion of the members of this court that the judgment herein must be affirmed.

*Judgment affirmed.*

DOYLE, P. J., and STEVENS, J., concur.